E-FILED
Friday, 22 December, 2006  09:08:28 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| EUNICE HUSBAND, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 04-3141 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Petitioner Eunice Husband's Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (d/e 1) (Petition).  For the reasons set forth below, the Petition is DENIED.

On August 6, 1998, Husband was indicted on the charge of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).  United States v. Husband, Docket No. 98-30050, Indictment (criminal docket entry no. 1).  Assistant Federal Defender David Mote was appointed to represent Husband.

Mote filed a motion to suppress all evidence found subsequent to the

1

time that police officers stopped Husband on March 12, 1998. The Motion recited facts based on the affidavits and reports of law enforcement officials.  <u>Motion to Suppress (criminal docket entry no. 9) (Motion)</u>, ¶¶ 1-22 .  According to the officers, the following occurred.  Springfield Police Detective Stephen Welsh received a telephone call from a neighborhood resident who suspected that drugs were being sold from a vehicle that was parked regularly in the driveway of 1225 North 5th Street, Springfield, Illinois.  The vehicle was regularly parked in the driveway from 4:00 p.m. to 3:00 a.m.  The caller stated that people approached the vehicle, talked to the driver briefly, and then left. The caller never saw drugs or cash change hands.

On March 12, 1998, Welsh and Springfield Police Detective G. Bonnett went to the area of 1225 North 5th Street.[1]  They observed a gray vehicle sitting in the driveway.  A black man and a white woman were seated in the vehicle.  They observed another white woman approach the driver side of the vehicle, talk with the occupants briefly, and leave.  The

---

[1]Welsh referred to Bonnett's first name only by the initial "G."  <u>E.g.</u>, <u>Petition</u>, exhibits, <u>Affidavit of Stephen Welsh</u>.  The prosecutor gave Bonnett's first name as "Tom."  <u>Transcript of Proceedings on February 27, 2001 (criminal docket entry no. 93)</u>, at 3.  The Court has not found any further clarification regarding Bonnett's first name. The Court has elected to use the first initial "G."

3:04-cv-03141-JES   # 8   Page 3 of 20

vehicle subsequently drove away.  Welsh and Bonnett attempted to follow the vehicle, but lost it.  The vehicle returned to the driveway at 1225 North 5th.

Welsh then contacted Police Officers Steven Tremaine and Scott Robert Kincaid.  Welsh directed them to approach the vehicle to find out if the persons in the vehicle were allowed to be on the property at 1225 North 5th.  On March 12, 1998, at about 7:41 p.m., Tremaine and Kincaid approached the vehicle.   Kincaid recognized Husband as the driver. Kincaid was aware of a prior incident in which Husband had a gun.  Officers Kincaid and Tremaine ordered the occupants of the vehicle to show their hands.  The passenger raised her hands, but Husband did not raise his hands.  Officers again told Husband to show his hands, but he did not do so.  Tremaine then drew his weapon.

At this time, Kincaid observed that Husband's pants were undone, and Husband's hands were in his pants.  Husband raised his hands to his mouth and appeared to put something in his mouth.  Kincaid and Tremaine then placed Husband under arrest for obstructing a police officer.  After he was arrested, Husband kept his jaw clenched shut and refused to open his mouth.

Husband was taken to the Sangamon County, Illinois, jail. All during this time, Husband refused to open his mouth. Police officers kept Husband under constant surveillance to make sure that nothing went into or out of his mouth.

Welsh then prepared an application and an affidavit to secure a warrant to search Husband's body. The affidavit recited the facts set forth above. The affidavit stated that an object appeared to be in Husband's cheek and that Husband refused to open his mouth. Petition, attached exhibits, Affidavit of Stephen Welsh.

 While waiting for the warrant, officers observed Husband starting to sweat and twitch. Officers were concerned that he was starting to have a seizure. He was then transported by ambulance to St. John's Hospital in Springfield, Illinois. Officer Tremaine rode with Husband in the ambulance. The EMT gave Husband an injection in the ambulance. The shot was a medicine designed to slow down the effects of any drug that Husband may have swallowed.

Illinois Associate Circuit Judge George Ray then issued a warrant to search the body of Husband for illegal drugs, weapons, or contraband. Id., exhibits, Warrant. At the hospital, Husband continued to refuse to open his

4

mouth.  Doctors tried to pry his mouth open, but were unsuccessful.  The doctors then administered an anesthesia called Etomidate (also called Amidate) to Husband.  As the anesthesia took effect, Husband's mouth relaxed, and officers retrieved crack cocaine from his mouth.  See United States v. Husband, 226 F.3d at 629.

Husband moved to suppress the evidence on the grounds that the officers did not have sufficient cause to make the initial stop; the use of anesthesia to carry out a search was unlawful; failure to show Husband the warrant and give him an opportunity to comply before using the anesthesia violated the Fourth Amendment's requirements of reasonableness; and the warrant was overbroad.

Attorney Mote and the Government entered into a stipulation of facts for consideration of the Motion.  The stipulation adopted the facts set forth in the Motion and the Government's response.  The stipulation further stated that the injection in the ambulance was done by an intravenous fluid line started by the EMT and that the drug administered in the ambulance was Narcan.  Stipulation (criminal docket entry no. 22).  Husband states that he wanted to testify and have his best friend James Markey testify.  Markey lived next door at 1215 North 5th Street.  Husband states that Mote

5

would not let them testify.

United States Magistrate Judge Byron G. Cudmore entered a Report and Recommendation recommending that the Motion to Suppress be denied.  Report and Recommendation entered December 1, 1998 (criminal docket entry no. 24).  Husband objected to Judge Cudmore's Report and Recommendation.  United States District Judge Richard Mills accepted the Report and Recommendation, over Husband's objections, and denied the Motion.  Husband then entered a conditional plea of guilty in which he reserved the right to appeal the decision to deny the motion to suppress. Judge Mills then sentenced Husband to the statutory mandatory minimum sentence of 120 months.  Judgment in a Criminal Case entered July 21, 1999 (criminal docket entry no. 52).

Husband then appealed his conviction.  The Seventh Circuit Court of Appeals remanded the case for further factual findings surrounding the details of the use of the anesthesia to cause Husband to open his mouth. United States v. Husband, 226 F.3d 626, 629 (7th Cir. 2000).  On remand, Husband was represented by a new attorney, Stanley Wasser.  Judge Cudmore allowed Husband to withdraw from the stipulation of facts and present evidence.  An evidentiary hearing was held on February 27-28,

2001.  <u>Transcripts of Proceedings on February 27-28, 2006 (criminal docket</u>
<u>entry nos. 93-94)</u>.  Husband's new attorney Wasser, however, also did not
call Husband or Markey to testify.

Husband then filed <u>pro</u> <u>se</u> motions for new counsel and for the
opportunity to present additional evidence.  The Court appointed a third,
and then a fourth, counsel for Husband.  The Court also allowed Husband's
request for a supplemental hearing.

The supplemental hearing was held on August 1, 2001.  <u>Transcript of</u>
<u>Proceedings on August 1, 2001 (criminal docket entry no. 127) (August 1</u>
<u>Transcript)</u>.  The fourth counsel, Babette Salus, represented Husband at the
hearing.  Husband and Markey testified.  According to their testimony, the
following occurred on March 12, 1998.  Husband went to 1225 North 5th
to visit a friend named Sherri Porter, who lived there.  After visiting her,
Husband went to Markey's house next door.  At about 7:00 p.m.,
Husband's girl friend Jody Porter, arrived.[2]  Husband and Jody Porter sat in
his parked car until about 7:30 p.m. At that time, Husband spotted Kincaid
and Tremaine's squad cars.  One was parked on a side street facing the west
side of North 5th Street.  The other was traveling south on North 5th.

---

[2]Sherri Porter and Jody Porter are not related.

Husband immediately put the cocaine in his mouth at that time.   He knew from experience that there would be an encounter with police. Tremaine then pulled up behind Husband's vehicle so as to block him in. Kincaid parked behind Tremaine.  The high beam lights on top of one of the squad cars were then directed into the windshield of Husband's vehicle. Tremaine and Kincaid exited their vehicles with weapons drawn.  They pointed their weapons at Husband, and Kincaid shouted, "Get your hands up." <u>August 1 Transcript</u>, at 22. Husband complied with the instruction. Kincaid then ordered Husband to roll down his window and stick his hands out of the window.  Husband complied.  Kincaid then ordered him to get out of the car.  Husband complied.  By then Police Officer Ronald Howard was also at the scene.   The officers then threw Husband face down into the ground.  There was snow on the ground at the time.  The officers then handcuffed Husband.  Husband then saw eight to ten officers dressed in camouflage fatigues and ski masks run up from behind the house.  He saw another eight to ten officers come up the street.  He also saw four or five police cars then pull up.

Kincaid questioned Husband, but did not read him his <u>Miranda</u> rights. At one point, Husband opened his mouth and Kincaid looked into his

mouth, but did not see anything.  Id., at 27.  Kincaid was about to let Husband go, when he noticed Husband's face and saw a lump in his cheek. Husband refused to open his mouth to show what was inside.  Bonnett arrived and offered to let Husband go if he would tell them his source for the drugs.  Husband refused.  Tremaine then took Husband to the Sangamon County jail.

The remainder of this version of events, as told by Husband and Markey, was substantially similar to the officers' version except that, according to Husband, the police directed a nurse to administer the Etomidate, and no doctor was involved.  Id., at 47-48.

Judge Cudmore issued a sixty-one page Report and Recommendation on September 5, 2001.  Report and Recommendation (criminal docket entry no. 130) (September 5 R & R).  He first found that the Seventh Circuit remand was limited to the reasonableness of the use of medicine to anesthetize Husband to conduct the search.  Judge Cudmore said that all other challenges were waived.  Id., at 13-17.  Judge Cudmore, however, also addressed each of Husband's claims on the merits.  Judge Cudmore found that: (1) the officers were justified to approach Husband's vehicle to determine if he had authority to be on the 1225 North 5th Street property;

(2) the officers had a valid basis to ask Husband to show his hands because of Husband's history with guns; (3) Husband refused to comply with officer's instructions; (4) Officer Kincaid observed Husband take something from his pants and put the object into his mouth; (5) the officers had probable cause to arrest Husband for obstruction; (6) once under arrest they observed the bulge in Husband's mouth, and Husband would not open his mouth; (7) the warrant to search Husband was valid; and (8) the search was reasonable under the circumstances. Judge Cudmore specifically found that Husband's version of the events was not believable. Id., at 23-24. Judge Cudmore recommended denying the Motion. Id., at 61. Judge Mills adopted that recommendation. Judge Mills again sentenced Husband to 120 months imprisonment. The Seventh Circuit affirmed on appeal. United States v. Husband, 312 F.3d 247 (7th Cir. 2002). Husband filed a petition for certiorari before the Supreme Court, which was denied.

Husband then filed this Petition. He raised six claims of ineffective assistance of counsel by his first lawyer Mote: (1) Mote should have challenged whether the initial encounter was a seizure and not a Terry stop; (2) Mote should have challenged the warrantless arrest at the scene; (3) Mote should have challenged the validity of the search warrant; (4) Mote

10

should have challenged the propriety of administering Narcan and the Etomidate; (5) Mote should have challenged the sufficiency of the evidence that the substance in his mouth was crack cocaine; (6) Mote failed to disclose to Husband before he pleaded guilty that he would be subject to eight years supervised release.

At this stage of the proceeding, this Court must determine whether Husband is entitled to an evidentiary hearing on his claims of ineffective assistance.  § 2255 Rule 8(a).  Husband must submit detailed and specific evidence which shows that he has actual proof of the allegations, rather than mere unsupported assertions, before he is entitled to an evidentiary hearing. Galbraith v. United States, 313 F.3d 1001, 1009 (7th Cir. 2002).  To establish ineffective assistance of counsel, Husband must show: (1) the counsel's performance fell below an objective standard of reasonableness; and (2 ) the counsel's deficient performance prejudiced him resulting in an unreliable or fundamentally unfair outcome of the proceeding.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  Husband has failed to present any evidence that would establish any of his ineffective assistance claims.

1.   The Initial Stop

Husband argues that Mote waived the opportunity to challenge the characterization of the initial encounter as a <u>Terry</u> stop. A <u>Terry</u> stop is an investigative stop in which an officer makes a limited intrusion into a citizen's liberty in order to investigate the possibility that criminal activity is occurring. <u>Terry v. Ohio</u>, 392 U.S. 1, 8-9 (1968). The officer must have a reasonable suspicion that criminal activity may be afoot. <u>United States v. Cortez</u>, 449 U.S. 411, 417 (1981). The intrusion must also be limited in scope and executed through the least restrictive reasonable means. <u>Terry</u>, 392 U.S. at 8-9.

Husband argues that he was arrested when the officers blocked his car in and came at him with guns drawn. His argument is based on his version of the events. His basic complaint is that Mote stipulated to the officers' version of the events. The officers' version showed that the initial encounter was a valid, limited inquiry to determine whether Husband had permission to park on someone else's property. The officers had a reasonable basis to make this inquiry.

Husband believes that Mote should have allowed Markey and him testify at the first consideration of the Motion. If so, he could have shown that he was in fact arrested when the officers blocked his vehicle in and

approached his vehicle with guns drawn.  He could have also established that he complied with all of the officers' requests to raise his hands, put his hands out of the car window, and step out of the vehicle.

Mote's decision not to present Husband's version of the events met the objective standard of reasonableness.    Indeed, Mote's decision was sound trial strategy.  See Strickland, 466 U.S. at 689.  Judge Cudmore ultimately heard Husband's version of events and determined that his story was not believable.  Mote, thus, made a very reasonable decision not to present incredible testimony to the Court.  If Husband had testified at the first consideration of the Motion, his unbelievable testimony would have placed him at risk.  The Court would have found at sentencing that he attempted to obstruct justice by lying at the suppression hearing and might have lengthened his sentence as a result.  See U.S.S.G. § 3C1.1.  By keeping Husband off the stand, Mote avoided this risk.[3]

Furthermore, Husband suffered no prejudice from Mote's decision. Husband finally got to testify, but his testimony was not believable.  Since the testimony was not believable, Judge Cudmore would have still believed

---

[3]Husband's second counsel Wasser also met the standard of reasonableness in not calling Husband to the stand for the same reasons.

the officers' version of the events.  Husband, thus, suffered no prejudice by Mote's decision to stipulate to the officers' version of the events.  That version of the events showed that the officers did not immediately arrest or seize Husband.  Rather, they approached his vehicle for the limited purpose of finding out whether he had permission to park on someone else's property.  The officers did not interfere with Husband's liberty until Kincaid recognized Husband and directed him and his companion to show their hands.  This direction was a very limited intrusion solely for the purpose of officer protection since the officers knew that Husband had been involved with weapons in the past.  The limited intrusion was clearly valid in the interest of officer safety.  See United States v. Adamson, 441 F.3d 513, 521 (7th Cir. 2006).

2.    Warrantless Arrest

Husband next argues that Mote was ineffective in not challenging the validity of his arrest.  Husband was arrested for obstruction when he refused to comply with the officers' lawful directions to show his hands and when he hid contraband in his mouth.  The officers observed Husband commit these illegal acts and so had probable cause to arrest.  Mote was not ineffective in failing to challenge those findings.

14

Husband again relies on his version of the events to argue that the arrest was without probable cause.  Judge Cudmore heard this evidence and determined that it was not believable.  Given that finding, Mote acted reasonably, for the reasons discussed above, in not presenting unbelievable testimony to the Court or relying on such testimony.  Further, Husband suffered no prejudice from Mote's decision not to present incredible testimony to the Court.

Husband also argues that the arrest was a pretext because the officers always wanted to search him for drugs.  As long as the officers had probable cause to arrest, their underlying motives, if any, are irrelevant.  <u>Whren v. United States</u>, 517 U.S. 806, 813 (1996).  Here, Husband refused to comply with their instructions and so provided probable cause to arrest for obstruction.  Mote met the standard of reasonableness by electing not to raise this meritless argument.

3.  <u>Validity of the Warrant</u>

Next, Husband argues that Mote was ineffective in failing to challenge the validity of the warrant.  Specifically, Husband complains that Mote refused to subpoena tape recordings of Welsh's telephone conversation with the person who made the initial call.  Husband has no evidence that any

15

such recording was ever made.  Welsh testified that he was not aware of any record of the call.  Transcript of Proceedings on February 27, 2006 (d/e 93), at 63-64.  Given that the only evidence indicates that no record of the call existed, Mote did not commit any error in not issuing a subpoena.

Husband also complains that the warrant stated that the search would take place at the Sangamon County, Illinois, jail, not St. John's Hospital.  Husband presents no authority to support his argument that this alleged error in the warrant rendered it defective.  The warrant authorized the search of his body.  The fact that he was moved to the hospital for his safety did not change the scope of the search.  Mote had no reason to challenge the validity of the search warrant on these grounds.  His decision not to do so met the objective standard of reasonableness.

Husband argues that the warrant was defective because it did not set forth the means to execute the warrant.  A warrant is not required to specify the means of its execution.  Dalia v. United States, 441 U.S. 238, 254-59 (1979).  Mote had no grounds to raise this argument.

Husband complains that the warrant did not contain a certification required by state law for body cavity searches that the search would be conducted under sanitary conditions by a physician.  The provision cited by

Husband applies to the search of, "any body cavity other than the mouth." 725 ILCS 5/103-1(g). The provision, therefore, did not apply to this case. Mote, again, had no reason to raise this argument.

Husband argues that the warrant only authorized the search of his person, not an invasive search of his mouth. The Court disagrees. The affidavit in support of the application stated that the suspect had contraband in his mouth. It was clear that Judge Ray authorized the search of the body of Husband to look for that contraband. This argument is frivolous, and Mote was clearly correct in not raising it.

Husband makes an extended argument that the invasive nature of the search to which he was subjected violated his rights. Mote raised this issue before Judge Cudmore, Judge Mills, and the Seventh Circuit. The Seventh Circuit agreed in the first appeal that the invasive nature of the search had to be evaluated and remanded the matter for further proceedings. Mote was effective in presenting this argument.

On remand, a hearing was held on this issue. After the hearing, the invasive nature of the search was upheld both by the trial court and by the Seventh Circuit. United States v. Husband, 312 F.3d at 254-56. There was no ineffective assistance in connection with the question of the

reasonableness of the invasive search of Husband's mouth.

4.    <u>The use of Narcan and Etomidate</u>

Husband complains that Mote did not challenge whether the officers directed the EMT in the ambulance to give Husband Narcan.  All the evidence indicates that the EMT did that on his own to protect Husband from the effects of ingesting the drugs.  <u>Transcript of Proceedings on February 28, 2001 (criminal docket entry no. 94)</u>, at 17, 105 (testimony of Officer Tremaine and EMT Curt Moffit).  Mote, thus, met the objective standard of reasonableness in choosing not to make this baseless argument.

5.    <u>Whether the Drugs Were Crack</u>

Husband complains that Mote did not challenge whether the drugs found were crack cocaine.  Husband, however, admitted at his guilty plea hearing that the drugs were crack cocaine.  <u>Transcript of Proceedings on February 1, 1999 (criminal docket entry no. 47) (February 1 Transcript)</u>, at 29-31.  Mote, again, met the objective standard of reasonableness in not making a frivolous argument in light of Husband's admission.  Such frivolous arguments could have subjected Husband to a finding that he did not accept responsibility for his offense and might have subjected him to an increase in his sentence.  <u>See</u> U.S.S.G. § 3E1.1.

6.      <u>Impact of the PSI–Supervised Release</u>

Husband complains that Mote did not tell him he would be placed on eight years supervised release.   Judge Cudmore and the Government, however, both disclosed to Husband before he pleaded guilty that he would be placed on a term of at least eight years supervised release after completing his sentence.  <u>February 1 Transcript</u>, at 24-25, 27.  Husband, thus, suffered no prejudice even if Mote did not tell him before that date.

THEREFORE, the Husband's Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (d/e 1) is DENIED.  The Court directs that the copies of the following parts of the record of Husband's criminal proceeding, Case No. 98-30050, are made part of the record of this case: the Indictment (case no. 98-30050 d/e 1); the Motion to Suppress (case no. 98-30050 d/e 9); the Stipulation (case no. 98-30050 d/e 22); the <u>Report and Recommendation entered September 5, 2001 (case no. 98-30050 d/e 130)</u>; and all transcripts of proceedings (case no. 98-30050 d/e 44, 47, 93, 94, 127).  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   <u>    December 22    </u>, 2006.

19

FOR THE COURT:

s/Jeanne E. Scott

JEANNE E. SCOTT
UNITED STATE DISTRICT JUDGE